JDN

1
2
3
4
5
6

# IN THE UNITED STATES DISTRICT COURT

7

## FOR THE DISTRICT OF ARIZONA

8
9

Freddie Crespin,

No.   CV 19-00539-TUC-DCB

10

Plaintiff,

11

vs.

**ORDER**

12
13

Arizona, State of, et al.,

14

Defendants.

15
16

    Plaintiff Freddie Crespin, through counsel, initiated this action in Pima County Superior Court, and Defendants removed the action to federal court.  (Doc. 1, No. C20175313.)  Plaintiff asserts a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, against Arizona Department of Corrections (ADC) Director David Shinn in his official capacity.  (Doc. 1-3 at 4–10.)[1]  Before the Court is Defendant's Motion for Summary Judgment for Failure to Exhaust, which Plaintiff opposes.  (Docs. 21, 24.)  The Court will grant the Motion and dismiss the action without prejudice.

17
18
19
20
21
22
23
24
25

---

26
27

    [1] Plaintiff named former ADC Director Charles Ryan as Defendant, and Shinn was later substituted as the official-capacity Defendant.  (Doc. 1-3 at 5.)  *See* Fed. R. Civ. P. 25(a).

28

    Plaintiff also asserted a claim under the Arizona Free Exercise of Religion Act, Ariz. Rev. Stat. § 1493.03(B); however, that claim was dismissed with prejudice by the state court.  (Doc. 1-3 at 4–10; Doc. 1-3 at 253 (Oct. 11, 2019 Ruling).)

1    **I.    Background**

2         Plaintiff is a prisoner in the custody of the ADC.  (Doc. 1-3 at 4.)  He avers that in

3    2007, he became a practitioner of the Aztec religion, and burning sage is part of the Aztec

4    religious practice.  (*Id.* at 5.)  In 2015, Plaintiff switched his religion to Christian; however,

5    he continued to burn sage as part of his religious practice.  (*Id.* at 5.)  Plaintiff uses sage

6    burning as a spiritual cleansing ritual for his living space, and it is important to him because

7    it was a ritual that his grandmothers used.  (*Id.*)  Plaintiff continued to practice the sage

8    ritual because it brings him a sense of peace and feeling closer to God.  (*Id.*)  Plaintiff was

9    allowed to order and possess sage, sweetgrass, feathers, and other religious items for about

10   10 years.  (*Id.*)

11        On July 7, 2017, Plaintiff was transferred from the Arizona State Prison Complex

12   (ASPC) Lewis Complex to the ASPC Safford Complex, Tonto Unit.  (Doc. 25 ¶ 1.)  Upon

13   his arrival at the Safford Complex, Plaintiff's property was searched, and a number of items

14   were confiscated, including CDs, craft supplies, and religious items such as sage.  (*Id.* ¶¶ 2–

15   4.)

16        In his Fourth Amended Complaint, Plaintiff alleged that following facts:

17        On Friday, July 7, 2017, foil with burnt residue was discovered during the search of

18   Plaintiff's property.  (Doc. 1-3 at 5.)  The next day, Plaintiff's wife came to visit him, but

19   she was turned away and told that Plaintiff could not have visitors because burnt residue

20   was found on a foil in his properly.  (*Id.*)  No disciplinary hearing had been conducted at

21   this time.  (*Id.*)

22        The Deputy Warden imposed an administrative sanction suspending Plaintiff's

23   visits and phone calls for 3 years; however, still, no disciplinary hearing had been held.

24   (*Id.*)

25        The Criminal Investigations Unit stated that the residue was tested and came back

26   positive for opiates.  (*Id.* at 7.)  Plaintiff requested a urinalysis, and the results came back

27   negative for opiates.  (*Id.*)  But Plaintiff was placed on report for a 21B violation—

28   possession of drug paraphernalia.  (*Id.*)  Plaintiff did not use or possess opiates.  (*Id.*)

1    On July 14, 2017, a disciplinary hearing was conducted, and Plaintiff was found
2    guilty of the 21B charge.  (*Id.*)  Plaintiff appealed the conviction, and the appeal was
3    upheld, so Plaintiff submitted a second level appeal, which was upheld by the ADC
4    Director.  (*Id.*)  In addition to the administrative sanction of 3 years loss of visits and phone
5    calls, Plaintiff was issued disciplinary sanctions of loss of visits and phone calls with
6    family, loss of store privileges, loss of appliances, loss of 60-days good time, loss of 10
7    earned release credits, and 30 hours extra duty without pay.  (*Id.* at 8.)

8    Plaintiff re-applied to the ADC Chaplaincy for permission to use sage as part of his
9    religious practice.  (*Id.* at 8.)  The request was denied on the basis that it was not in
10   compliance with Plaintiff's religion.  (*Id.*)

11   Plaintiff alleged that the denial of the right to burn ritual sage imposes a substantial
12   burden in that he is unable to practice his religion according to his sincere religious beliefs.
13   (*Id.* at 9.)  Plaintiff further alleged that the denial of the right to burn ritual sage does not
14   further a compelling governmental interest, and the restriction is not the least restrictive
15   means of furthering any governmental interest.  (*Id.* at 9–10.)  Plaintiff seeks declaratory
16   and injunctive relief and attorney's fees and costs.  (*Id.* at 10.)

17   Defendant moves for summary judgment on the ground that Plaintiff failed to
18   exhaust administrative remedies for his claim as required under the Prison Litigation
19   Reform Act (PLRA), 42 U.S.C. § 1997e(a).  (Doc. 21.)

20   **II.    Summary Judgment Standard**

21   A court must grant summary judgment "if the movant shows that there is no genuine
22   dispute as to any material fact and the movant is entitled to judgment as a matter of law."
23   Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The
24   movant bears the initial responsibility of presenting the basis for its motion and identifying
25   those portions of the record, together with affidavits, if any, that it believes demonstrate
26   the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

27   If the movant fails to carry its initial burden of production, the nonmovant need not
28   produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099,

1102–03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court does not make credibility determinations; it must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.   Exhaustion

### A.   Legal Standard

Under the PLRA, a prisoner must exhaust "available" administrative remedies before filing an action in federal court.  *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934–35 (9th Cir. 2005).  The prisoner must complete the administrative review process in accordance with the applicable rules.  *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006).  Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino*, 747 F.3d at 1172; *see Brown*, 422 F.3d at 936–37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a). If a court concludes that a prisoner failed to exhaust, the proper remedy is dismissal without prejudice. *See Jones v. Bock*, 549 U.S. 199, 223–24 (2007); *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170–71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

**B.    ADC Grievance Procedure**

The ADC grievance policy is set forth in Department Order (DO) 802, *Inmate Grievance Procedure*. (Doc. 22 ¶ 5.) First, a prisoner attempts to resolve a complaint informally, but if that is not successful, he may submit an Inmate Informal Complaint to the unit Correctional Officer (CO) III. (*Id.* ¶¶ 8–9.) Next, if the prisoner is not satisfied with the CO III's response, he may file a Formal Grievance with the Grievance Coordinator, and the Deputy Warden issues a response to the Formal Grievance. (*Id.* ¶ 10.) If not satisfied with the Deputy Warden's response, the prisoner may file a grievance appeal to the Director. (*Id.* ¶ 11.)

The DO 802 grievance policy allows prisoners to grieve any aspect of institutional life or condition of confinement that personally affects them, and the DO 802 policy allows a prisoner to grieve the denial of a religious accommodation request.  (*Id.* ¶¶ 16–17.)

## C.    Discussion

In support of their Motion, Defendants submit numerous grievance documents, some of which are not relevant to whether Plaintiff exhausted available administrative remedies for the underlying claim in this action.   Plaintiff asserts that relevant to the exhaustion issue are (1) a grievance initiated on July 17, 2017; (2) an August 30, 2017 request to the Chaplain; and (3) whether the Director's appeal response cautioning discipline for further grievances rendered administrative remedies unavailable.  (Doc. 24 at 5–7.)

### 1.    Grievance Initiated on July 17, 2017 (case number S06-027-017)

On July 17, 2017, Plaintiff submitted an Informal Complaint stating that when he arrived at the Safford Complex on July 7, 2017, his property was searched and prison officials desecrated religious items and that, in doing so, officials denied Plaintiff a reasonable opportunity to pursue his faith as compared to fellow prisoners with more conventional religious beliefs.  (Doc. 22-1 at 78.)  Plaintiff wrote that prison officials' conduct violated Plaintiff's state and federal rights, including his rights under RLUIPA.  (*Id.*)  As a resolution, Plaintiff proposed that all his confiscated religious items be returned to him and that the officials involved be sanctioned.  (*Id.*)

On July 18, 2017, CO III Coca issued a response to the Informal Complaint and recited ADC policy governing the Criminal Investigations Unit and investigations on contraband or unauthorized property and ADC policy governing religious activities.  (*Id.* at 77.)  Coca informed Plaintiff that he had not been informed, and "may not be informed," as to whether there was an ongoing investigation concerning Plaintiff's property; therefore, he could "only conclude that this issue is resolved."  (*Id.*)

On July 24, 2017, Plaintiff proceeded to the next stop in the grievance process and submitted an Inmate Grievance.  (*Id.* at 76.)  Plaintiff complained that Coca's response was

not an adequate resolution because the confiscation of his religious items violated state and federal regulations and RLUIPA, and ADC policy states that prison officials must adhere to federal and state laws.  (*Id.*)

On August 23, 2017, Deputy Warden R. Hill issued a response to Plaintiff's Inmate Grievance, and informed Plaintiff that it was determined that the seized property did not include any religious property and that the property seized was properly disposed of pursuant to the policy governing contraband seizure and disposition.  (*Id.* at 75.)

On August 29, 2017, Plaintiff filed a Grievance Appeal to the Director.  (*Id.* at 72–73.)  In his appeal, Plaintiff wrote that the prison was failing to properly investigate lower ranking officials' misconduct that violated Plaintiff religious rights, and Plaintiff claimed that the misconduct was discriminatory.  (*Id.*)  Plaintiff noted that the seized religious items were related to the Aztec religion, and he alleged that prison officials were averse to Aztec religious beliefs.  (*Id.* at 73.)

The September 18, 2017 response from the Director informed Plaintiff that the Deputy Warden's response was affirmed and that the property tracking forms included in the grievance appeal packet did not list any religious items that were confiscated upon Plaintiff's arrival at Safford Complex; therefore, Plaintiff's allegations were unfounded.  (*Id.* at 70.)

The parties agree that this grievance was fully exhausted; however, they dispute whether it serves to exhaust remedies for Plaintiff's claim that he was denied the right to burn sage in the practice of his religion.  Defendant argues that this grievance concerned confiscation of religious property and made no claim that Plaintiff was denied permission to possess or burn sage for religious purposes.  (Doc. 21 at 6.)  Plaintiff argues that he was not required to specifically request to burn sage, only to grieve the denial of his right to practice his religion, of which burning sage is part.  (Doc. 26 at 2.)

"The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).  Thus, a grievance need not include legal theories, nor must it contain every

fact necessary to prove an eventual legal claim, but it must provide enough information to allow prison officials to take appropriate responsive measures.  *Id.* at 1120–21.  "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress[,]" and adequate notice requires only "the level of detail required by the prison's regulations."  *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010).

In *McCollum v. California Department of Corrections and Rehabilitation*, Wiccan prisoners brought claims alleging that their religious practice rights were violated by the prison's chaplaincy-hiring program because there was no paid Wiccan chaplaincy.  647 F.3d 870, 874, 876 (9th Cir. 2011).  The prisoners had filed grievances complaining that there was no full-time chaplain, that prisoners were subject to religious discrimination in the form of unequal accommodations of minority religions, and that prisoners had insufficient access to Wiccan vendors of religious materials.  *Id.* at 876.  The Ninth Circuit found that "[t]hese grievances give notice that inmates allege the prison policies fail to provide for certain general Wiccan religious needs and free exercise, but do not provide notice that the source of the perceived problem is the absence of a paid Wiccan chaplaincy."  *Id.*  Thus, the grievances failed to provide notice that the chaplaincy program "in and of itself burdens the exercise of their religion."  *Id.*  This was true even with respect to the grievance complaining that there was no full-time Wiccan chaplain, because in that grievance, the prisoner did not suggest that a full-time chaplain was required; rather, he proposed that he himself should serve as a prisoner minister.  *Id.*

In Plaintiff's grievance initiated on July 7, 2017, he complained of the confiscation and desecration of religious property; however, he never identified the religious property at issue, nor did he specify any particular religious practice that was being denied or burdened as a result of the confiscation of religious property.  Religious property can include a variety of materials, and a religious practice connected to "religious property," without more, is vague.  Plaintiff's argument that he was only required to grieve "the denial of his right to practice his religion" absent any specific mention of the religious practice at

issue—in this case, the use of sage or herbs—is belied by the holding in *McCollum*. (*See* Doc. 26 at 2.) Plaintiff's July 7, 2017 grievance failed to put prison officials on notice that the "source of the problem" was the confiscation of sage or herbs or that, as a result of property confiscation, he was unable to burn sage or herbs pursuant to his religious practice. *See McCollum*, 647 F.3d at 876; *see also Griffin*, 557 F.3d at 119, 1121 (the plaintiff failed to exhaust remedies for a deliberate indifference claim based on the jail staff's disregard of a nurse's order for a lower bunk because the prisoner's grievance did not mention the alleged disregard of the nurse's order; it only asked for a ladder or other means to access the top bunk, so officials were not aware that jail staff had ignored the nurse's order for a lower bunk).

Consequently, this grievance does not serve to exhaust administrative remedies for Plaintiff's claim.

### 2.    August 30, 2017 Request to Chaplain

On August 30, 2017, Plaintiff submitted an Inmate Letter to Chaplain Rutherford requesting to purchase religious items: a feather, bandanas, a shell, and sage. (Doc. 22-3 at 47.) Plaintiff wrote that he currently does not possess any of these items because, although previously approved and possessed, they had either been used up or thrown away upon his arrival to the Safford Complex. (*Id.*)

On September 2, 2017, Chaplain Rutherford issued an Inmate Letter Response denying Plaintiff's request on the ground that the items requested are not on the current approved items list for Plaintiff's religious preference and no information regarding the usage of the items was included in the request. (*Id.* at 46.)

That same day, Plaintiff submitted an Inmate Letter to the Religious Accommodations Committee explaining his request and Chaplain Rutherford's September 2, 2017 response. (*Id.* at 40.)[2] Plaintiff wrote that this denial violates his rights under the

---

[2] The parties agree that, although the Inmate Letter to the Religious Accommodations Committee is dated "08/02/2017," the correct date is September 2, 2017, as Plaintiff references Rutherford's September 2, 2017 response in this Inmate Letter. (Doc. 22-3 at 40; Doc. 24 at 2 n.1.)

First Amendment, and that his beliefs do not have to be associated with a traditional or established religion to be protected. (*Id.*) He cited case law to support his right to possess religious objects, and he attached a printout describing his beliefs and various objects and religious materials used in his religious practice. (*Id.* at 40–45.)

On October 18, 2017, Pastoral Administrator Chaplain Herman issued an Inmate Letter Response informing Plaintiff that his designated religious preference is Christian, and the current approved religious property list for Christians does not include the items he requested to purchase. (*Id.* at 39.) Herman wrote that since there is a disagreement between Plaintiff's declared religious preference and his proffered information about a belief system apart from the Christian religion, his purchase request was not approved. (*Id.*)

Defendant argues that Plaintiff could have, but failed, to subsequently use the grievance process to exhaust remedies after the Chaplain's and the Religious Accommodation Committee's denial of Plaintiff's request to purchase sage. (Doc. 21 at 4–5.) In response, Plaintiff asserts that the "grievances" to the chaplaincy do not affect exhaustion. (Doc. 24 at 6.) Plaintiff states that DO 802 does not mention chaplains; thus, these grievances to the Chaplain and the Religious Accommodation Committee fell outside of the relevant grievance procedure, and that "this is the equivalent of directing the prisoner to the wrong procedure, making the remedy unavailable under *Ross*." (*Id.*)

To the extent Plaintiff suggests that because the DO 802 grievance policy does not mention chaplains, religious issues cannot be grieved via the DO 802 grievance process, Plaintiff is incorrect. (*Id.*) The 802 grievance policy provides that it may be used to address prisoner complaints "related to any aspect of institutional life or condition of confinement that directly and personally affects the inmate grievant, including written instructions . . . , procedures, and the actions of staff." (Doc. 22-1 at 12.) The policy also states that it cannot be used as a duplicate process for those areas that have their own appeal process, including disciplinary, inmate mail, protective custody, and inmate classification. (*Id.*) Access to or the ability to purchase religious items would fall under "any aspect of institutional life or

1   condition of confinement" that affects a prisoner, and the DO 802 policy does not

2   specifically exclude religious requests or religious issues from the grievance procedure.

3       Under *Ross v. Blake*, an administrative procedure is unavailable when, despite what

4   the regulations may state, "it operates as simple dead end—with officers unable or

5   consistently unwilling to provide any relief to aggrieved inmates."  136 S. Ct. 1850, 1859

6   (9th Cir. 2016).   An administrative procedure is also unavailable if the administrative

7   scheme is "so opaque," or the rules "so confusing" that no prisoner can use them.  *Id.*

8   "[W]hen a remedy is . . . essentially 'unknowable'—so that no ordinary prisoner can make

9   sense of what it demands—then it is also unavailable."  *Id.* (citations omitted).   And an

10  administrative procedure is unavailable when prison officials thwart prisoners from taking

11  advantage of a grievance process through machination, misrepresentation, or intimidation.

12  *Id.* at 1860.  Plaintiff provides no evidence that he attempted to file a grievance about the

13  denials of his requests for sage but was thwarted by prison officials, nor does he allege or

14  show that grieving the denials would have been a dead end or that the DO 802 policy was

15  so confusing that he could not use the process to grieve the denials.   Indeed, the

16  documentary evidence shows that Plaintiff was familiar with the grievance process and

17  successfully exhausted remedies for other issues.  (*See* Doc. 22 ¶ 32; Doc. 26 ¶ 32.)

18      In sum, the Inmate Letters to the Chaplain and the Religious Accommodation

19  Committee show only that Plaintiff requested sage for his religious practice, but those

20  requests were denied, and there is no evidence that, thereafter, he attempted to file a

21  grievance regarding the denials or that remedies were unavailable.

22              **3.     Whether Remedies Were Available After Director's Caution**

23      On July 24, 2017, Plaintiff submitted an Informal Compliant complaining about

24  officials' failure to adhere to procedural protections in Plaintiff's disciplinary hearing

25  related to the burnt foil found in his property.  (Doc. 22-2 at 10.)  Plaintiff wrote that the

26  finding against him was unjust and arbitrary, and he proposed reversal of the disciplinary

27  sanctions against him and an investigation and reprimands for certain officials.  (*Id.*)

28

On July 25, 2017, CO III Coca issued a response to the Informal Complaint, in which he cited ADC policy providing that disciplinary has its own appeal process and cannot be addressed through the ADC grievance policy.  (*Id.* at 9.)

On July 26, 2017, Plaintiff submitted an Inmate Grievance stating that he did not mean to use the grievance process as a duplicate appeal process; rather, his grievance concerns that action and inactions of certain officials and their failure to properly discharge their duties, and that Plaintiff sought to impose corrective measures.  (*Id.* at 7–8.)

On August 24, 2017, Deputy Warden Hill issued the Inmate Grievance Response.  (*Id.* at 6.)  Hill informed Plaintiff that his claim that officials failed to discharge their duties was unfounded and that disciplinary had its own separate appeals process.  (*Id.*)

On August 29, 2017, Plaintiff submitted a Grievance Appeal to the Director reasserting that certain officials failed to discharge their responsibilities as required under state law and ADC policy, and that under ADC policy, prompt administrative action and/or corrective disciplinary action must be brought.  (*Id.* at 4–5.)  Plaintiff wrote that officials' misconduct related to "chain of custody" and obtaining scientific analysis from the Department of Public Safety laboratory.  (*Id.* at 5.)  Plaintiff asserted that because this concerns actions of staff, it falls under the ADC grievance policy.  (*Id.*)

In the September 18, 2017 Director's Response, Plaintiff was informed that the Wardens' response was affirmed, and disciplinary has its own appeal process, so Plaintiff could not re-argue his case through another review process.  (*Id.* at 2.)  The Director also wrote the following:

> Please note that you have filed two complaints at the Central Office level that fall within the definition of a Vexatious Grievant/Vexatious conduct.  The other grievance is case number S06-027-017.  You are being cautioned by this office to comply with Department [Order] 802 and refrain from filing Vexatious Grievances.  Otherwise, staff will have no choice, but to issue you a disciplinary ticket for a 17A.

(*Id.*)

1    Plaintiff contends that this threat of disciplinary retaliation if he persisted to file

2    grievances "is the ultimate expression of unavailability that the system could possibly

3    have." (Doc. 26 at 5.)  He submits that upon receipt of this response, he could not have

4    pursued any further administrative remedies regarding the denial and desecration of his

5    religious items, including sage. (*Id.* at 5–6.)

6    Notably, the two grievances falling within the Vexatious Grievant conduct both

7    sought investigations into officials' conduct and sanctions against those officials for

8    alleged violations of state and federal law and ADC policy.  Again, these grievances did

9    not mention sage or herbs, nor did they mention denial of the right to burn sage as part of

10   Plaintiff's religious practice.  As Defendant points out, there is no evidence, such as an

11   affidavit from Plaintiff, that he was deterred from filing grievances after receiving this

12   Response from the Director. (Doc. 27 at 7.)  Moreover, after receiving the September 18,

13   2017 Response, Plaintiff continued to file other grievances. (Doc. 22 ¶ 32; Doc. 26 ¶ 32.)

14   In short, there is no evidence to support that the Director's Response cautioning

15   Plaintiff from filing grievances similar to the two referenced complaints rendered remedies

16   unavailable for Plaintiff to grieve that he was unable to possess or burn sage as part of his

17   religious practice.

18   In light of the above, Defendant has established that administrative remedies were

19   available for Plaintiff to grieve his claim against Defendant, but he failed to do so.  Plaintiff

20   failed to respond with evidence to show that he exhausted administrative remedies or that

21   there was something in his particular case that made the existing and available

22   administrative remedies effectively unavailable to him.  *See Albino*, 747 F.3d at 1172.

23   Summary judgment will therefore be granted to Defendant on the issue of exhaustion, and

24   the Fourth Amended Complaint will be dismissed without prejudice.[3]

25   **IT IS ORDERED:**

26

27

28   [3] Because dismissal is without prejudice, if Plaintiff is still being denied the right to possess and burn sage in the practice of his religion, he may refile a complaint after exhausting administrative remedies.

(1)     Defendant's Motion for Summary Judgment (Doc. 21) is **granted**.

(2)     Plaintiff's Fourth Amended Complaint (within Doc. 1) is **dismissed without prejudice** for failure to exhaust administrative remedies.

(3)     The Clerk of Court must enter judgment accordingly and terminate the action.

Dated this 19th day of April, 2021.

Honorable David C. Bury
United States District Judge

- 14 -